**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ ) | |
| KENNETH DURONN WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 20-0100 (ABJ) |
| ) | |
| CHAD F. WOLF, ) | |
| *Acting Secretary Department* ) | |
| *of Homeland Security*, ) | |
| ) | |
| Defendant. ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Kenneth Duronn Wilson, a former employee of the Federal Emergency Management Administration ("FEMA"), has filed a six-count complaint against the head of the Department of Homeland Security,[1] arising out of his employment as a reservist between 2011 and 2016. Complaint [Dkt. # 1] ("Compl."). Plaintiff brought claims under Title VII, 42 U.S.C. § 2000e, and under the Civil Rights Act provisions, 42 U.S.C. §§ 1981 and 1983, alleging that he was subjected to racial and gender discrimination, retaliation, and a hostile work environment. He also brought a claim of retaliation under the False Claims Act ("FCA"), 31 U.S.C. § 3730(h), and conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3). Compl. ¶¶ 66–103.

---

1       Plaintiff originally sued Kevin K. McAleenan, who was at that time the Acting Secretary of Homeland Security, and Chad F. Wolf was later automatically substituted as a defendant under Federal Rule of Civil Procedure 25(d). Wolf has since stepped down, and the docket has not yet caught up with the changes in personnel.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant has filed a partial motion to dismiss those portions of the race discrimination claim in Count One and the retaliation claim in Count Three that are predicated on section 1983; that portion of the gender discrimination claim in Count Two that is predicated on section 1981; and Counts Four (retaliation in violation of the False Claims Act); Five (hostile work environment), and Six (section 1985 conspiracy). Def.'s Mot. to Dismiss in Part & Mem. in Supp. of Mot. [Dkt. # 10] ("Def.'s Mot."). Plaintiff, who is represented by counsel, filed a timely opposition, but he did not address the objections to claims based on sections 1981, 1983, or 1985. *See* Pl.'s Mem. in Opp. to Def.'s Mot. [Dkt. # 13-1] ("Pl.'s Opp."). Upon consideration of the entire record in this case and the parties' submissions,[2] the Court will grant defendant's motion.

## BACKGROUND

Plaintiff is an African-American male who was employed by FEMA intermittently between 2006 and 2016. Compl. ¶¶ 12–60. He served as a reservist who could be deployed to disaster locations for temporary assignments. *Id*. ¶ 12. Plaintiff worked in the Office of Field Operations ("OFO"), *id*. ¶ 13, and his supervisory team included Timothy Henggeler, Jeffery Cole, Tom Szmyr, Dan Paton, Pete Connolly, Laura Swedlow, John Alonso, and Gary Butkus. *Id.* ¶ 14; Pl.'s Opp. at 2. He was terminated in 2016. Compl. ¶ 60.

According to the complaint, plaintiff was sent to New York in the aftermath of Hurricane Irene in August 2011, Compl. ¶¶ 12–13, and he alleges that he was scheduled to demobilize from

---

2      *See* Ex. A to Compl. [Dkt. # 1-1] ("November 2019 DHS Final Order"); Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss in Part [Dkt. # 13] ("Pl.'s Resp."); Def.'s Reply Mem. in Supp. of Mot. [Dkt. # 14] ("Def.'s Reply").

that assignment on February 24, 2012.  *Id*. ¶ 25.  The complaint raises a series of concerns based on how he was treated during that time period and thereafter.

**October 2011 Reassignment**

Plaintiff states that he was re-assigned from the Long Island, New York OFO to the Birmingham, New York OFO in October 2011, and he alleges that the action was motivated by race discrimination.  Compl. ¶¶ 18–19.  Timothy Henngeler's stated reason was to save FEMA money on travel expenses, *id*. ¶ 18, and plaintiff was replaced in the Long Island OFO with Paul Swindells.[3]  Plaintiff submits that the replacement was part of a larger scheme on the part of John Alonso, a Hispanic and African-American male, and Laura Swedlow, a white female, to enable Swindells to accrue travel benefits to which he was not entitled since he lived less than fifty miles from the site.  *Id*. ¶ 20.

In November 2011, plaintiff contacted the Equal Rights Office of the Department of Homeland Security ("DHS ERO") to lodge a complaint that his reassignment was discriminatory and was part of a fraudulent scheme, and an ERO counselor interviewed him that same month. Compl. ¶ 20.  Jeffrey Cole and Henggeler were interviewed in December 2011, and Alonso was interviewed in January 2012.  *Id.* ¶ 21.

**January 2012 Demotion**

Plaintiff also states that in January 2012, he was demoted from the position of "Manager" to "Specialist Trainee."  Compl. ¶ 22.  He alleges this "reassign[ment] . . . virtually denied [him] the ability to secure deployments" and "adversely affected [his] deployment opportunities for two and a half years," until he was re-hired by FEMA for a four-year appointment in June 2014.  *Id*.

---

3       Plaintiff does not specify Swindells's race.

According to the complaint, plaintiff filed an Individual Complaint of Employment Discrimination (agency case number:  HS-FEMA-21715-2012) with the DHS ERO on or about January 20, 2012, incorporating his allegations that his October 2011 reassignment was discriminatory and accusing Alonso of orchestrating the travel status scheme with plaintiff's replacement, Swindells.  Compl. ¶ 23.

**February 2012 Demobilization**

On February 10, 2012, plaintiff was told that his position in the Birmingham OFO would be eliminated as part of a twenty-percent cut in the New York disaster workforce.  Compl. ¶ 24. Plaintiff asked Henggeler if his previous Long Island OFO position, now held by Swindells, was also being cut, and he was informed that it was not.  *Id*. ¶ 25.  Gary Butkus asked plaintiff to leave the Birmingham OFO ahead of his February 24, 2012 demobilization date, and plaintiff reported to his ERO representative that he believed this request was in retaliation for his initial complaint. *Id*. ¶ 27.

In March 2012, plaintiff updated his January 2012 complaint with the DHS ERO to include claims of discrimination, retaliation, and waste, fraud, and abuse.  Compl. ¶ 28.  Plaintiff asserts that the January 2012 demotion and February 2012 early demobilization prevented him from finding work for two years and had an adverse effect on his finances, family life, and mental and physical health.  *Id.* ¶ 30.

**May 2014 Revocation of Employment Offer**

In April 2014, plaintiff applied for an Incident Management Assistant Team ("IMAT") position with FEMA and had a final interview on May 5, 2014.  Compl. ¶ 31.  Plaintiff alleges that he was offered the job that evening over the phone, but the offer was rescinded an hour later by

"letter."  *Id*. ¶ 32.  Plaintiff believes that his employment offer was revoked due to the intervention of Dan Paton, who had recently become the "Logistics Section Chief for IMAT East."  *Id*. ¶ 34.

**May 2016 Termination**

Shortly thereafter, though, plaintiff was hired in June 2014 for a four year term as an "IMAT Support Branch Director II" in Missouri.  Compl. ¶ 35.  According to plaintiff, he received an "exceed expectations" performance review in April 2015, during which time he was supervised by Ralph Meyers and DuWayne Tewes, both white males.  *Id*. ¶¶ 36, 40.  However, plaintiff alleges that between April 2015 and May 2016, he was:

- denied the option of teleworking, *id*. ¶ 39;

- "forced to sit at the same table as Mr. Paton" during an IMAT training exercise, *id*. ¶ 41;

- issued a formal letter of reprimand ("LOR") for "failure to follow instructions and lack of candor," *id*. ¶ 43;

- denied the use of a purchase card and the ability to sign off on his direct reports' expenses, *id*. ¶¶ 47, 54, 58;

- given an "unsatisfactory" performance rating in February 2016, *id*. ¶ 53;

- called "lazy" and repeatedly denied training opportunities, *id*. ¶¶ 51, 57;

- ordered to demobilize on April 1, 2016, *id*. ¶ 55; and

- terminated from employment on May 20, 2016.  *Id*. ¶ 60.

In July 2015, plaintiff informed DHS ERO of his contentions that the telework denial was discriminatory, and that the issuance of the LOR was retaliatory.  Compl. ¶ 44.  Plaintiff formalized these allegations in September 2015, and he lodged a second complaint with the DHS ERO (agency case number:  HS-FEMA-24518-2015).  *Id*. ¶ 46.

## PROCEDURAL HISTORY

Plaintiff's two complaints before the DHS ERO were consolidated before an Equal Employment Opportunity Commission ("EEOC") Administrative Judge ("AJ").   As the DHS Office for Civil Rights and Civil Liberties ("CRCL") later reported in the November 2019 decision appended to plaintiff's complaint:   on August 14, 2018, the AJ dismissed both of plaintiff's cases (HS-FEMA-21715-2012 and HS-FEMA-24518-2015) without prejudice and ordered DHS to complete the investigation; on March 8, 2019, the AJ issued another dismissal without prejudice and instructed plaintiff of his right to refile no later than June 14, 2019; and, since plaintiff took no further action, the AJ dismissed plaintiff's hearing request for failure to prosecute pursuant to 29 C.F.R. § 1614.107(7) on September 29, 2019.  *See* November 2019 DHS Final Order at 2.  Based on the AJ's findings, the CRCL found that plaintiff had failed to prosecute his case, and it fully implemented the AJ's decision to dismiss the claims with prejudice.  *Id*. at 4.

Based on all of these events, plaintiff filed this lawsuit seeking the wages he lost during periods of unemployment and under-employment, damages for the alleged associated deterioration in his mental and physical health, and injury to his reputation.  Compl. ¶ 104.  The 2019 complaint included six counts:

> Count One:  race discrimination claims founded upon Title VII and 42 U.S.C. §§ 1981 and 1983;
>
> Count Two:  sex and gender discrimination based on Title VII and 42 U.S.C. §§ 1981 and 1983;
>
> Count Three:  retaliation in violation of Title VII and 42 U.S.C. §§ 1981 and 1983;
>
> Count Four:  retaliation in violation of the False Claims Act, 31 U.S.C. § 3730(h);
>
> Count Five:  hostile work environment claim based on Title VII and 42 U.S.C. §§ 1981 and 1983; and

Count Six:  conspiracy to deprive plaintiff of his civil rights in violation of 42 U.S.C. § 1985(3).

Compl. ¶¶ 66–103.

Defendant has moved to dismiss those portions of Counts One and Three that are predicated on section 1983, Count Two insofar as it is based on section 1981, and Counts Four, Five and Six in their entirety.  *See* Def.'s Mot. at 1, 4.  What would remain would be the allegations of race discrimination and retaliation in Counts One and Three that are founded on Title VII.

## LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When considering a motion to dismiss under Rule 12(b)(6), the Court must construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979).  That said, the Court is not required to accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Kowal*, 16 F.3d at 1276; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference

in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

### I.    Section 1983 Claims included in Counts One and Three

Count One purports to base claims for racial discrimination on both Title VII and 42 U.S.C. § 1983, and Count Three advances retaliation claims on both theories.  The government moves to dismiss those portions of the claims based on section 1983 because the complaint involves conduct by federal actors – FEMA employees, plaintiff's supervisors – acting under color of federal law.  Def.'s Mot. at 6–7.  While plaintiff did not respond to this aspect of the motion to dismiss, and under the Local Rules of this court those objections could be deemed to be conceded,[4] it is clear from the plain language of the statute that section 1983 does not apply to federal officials. 42 U.S.C. § 1983 ("Every person who, under color of any statute, regulation, custom or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured . . . ."); *see Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005) ("To recover under [section]

---

4       "Within 14 days of the date of service [of a party's motion] or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion.  If such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded."  LCvR 7(b).  *But see Wash. Alliance of Tech. Workers v. United States*, 892 F.3d 332, 344–45 (D.C. Cir. 2018) (finding that district court abused its discretion in dismissing a complaint under Local Rule 7(b) when the plaintiff timely filed an opposition and "rest[ed] on its complaint in the face of a motion to dismiss"); *Coulston v. Wash. Metro Area Transit Auth.*, Civ. Action No. 19-2060, 2020 WL 1236563, *5 n.2 ("[T]he D.C. Circuit recently cast doubt on whether failing to oppose an argument is, alone, enough to warrant dismissal.  *Wash. Alliance*, 892 F.3d at 345.  Because the Court agrees with Defendants, it need not decide whether Plaintiffs' failure to respond is dispositive.").

1983, the plaintiff must show that the defendant was acting 'under color' of state law.  Section 1983 does not apply to federal officials acting under color of federal law.") (citations omitted). Therefore, those portions of  Counts One and Three based on section 1983 will be dismissed for failure to state a claim.

## II.      Section 1981 Claims included in Count Two

Count Two alleges discrimination based on plaintiff's "sex or gender as a male," and it too is based on both Title VII and a section of the Civil Rights Act aimed at the conduct of state officials.  The invocation of section 1981 is problematical for that reason, and for the additional reason that section 1981 addresses only discrimination based on race, and not gender. *See* 42 U.S.C. § 1981; *see also Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 n.1 (D.C. Cir. 2013) ("Section 1981 covers discrimination on the basis of race.").  Plaintiff did not offer any argument in opposition to defendant's motion to dismiss the portion of Count Two based on section 1981, and it will be dismissed.

## III.      Count Four:  False Claims Act Retaliation

Count Four alleges retaliation in violation of the False Claims Act, and defendant moves to dismiss it as untimely.  *See* Def.'s Mot. at 7–8; Def.'s Reply at 1–5.  Under the statute of limitations in the False Claims Act as amended, a civil action for retaliation against a whistleblower must be brought within three years.  31 U.S.C. § 3730(h)(3) ("A civil action under this subsection may not be brought more than 3 years after the date when the retaliation occurred.").  Plaintiff was terminated on May 20, 2016, and the complaint was filed on January 29, 2020, more than three years and eight months later.  Compl. ¶ 60.

Plaintiff does not dispute the fact that the limitations period has expired, but he argues that the doctrine of equitable tolling would apply.  *See* Pl.'s Opp. at 9–11.  Equitable tolling is an

"extraordinary" remedy, *Smith-Haynie v. Dist. of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998), and plaintiff bears the burden to show (1) that he pursued his judicial remedies "diligently," and (2) "that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010); *see also Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017) (applying the *Holland* test in the context of allegations of race discrimination and retaliation claims in the workplace). This is a "stringent test," *Commc'ns Vending Corp. of Ariz. v. FCC*, 365 F.3d 1064, 1075 (D.C. Cir. 2004), and the application of the doctrine would be unwarranted in a situation where a plaintiff has merely "failed to exercise due diligence in preserving his legal rights." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Plaintiff has not made the showing necessary for equitable tolling of the statute of limitations in this case. Plaintiff states generally that he "timely filed [his complaints] with the EEOC and pursued his case through various delays." Pl.'s Opp. at 10. But the assertion that he was diligent is not only inconsistent with the record of the EEO proceedings, *see* November 2019 DHS Final Order at 4, finding that the AJ "correctly dismissed [plaintiff's] cases for failure to prosecute," it is beside the point. The filing of an administrative claim is insufficient to form the basis for equitable tolling of the requirement to file a "civil action" within three years of the alleged retaliation as required under the False Claims Act. *See Niskey*, 859 F.3d at 7; *see also Poole v. United States Gov't Publ'g Office*, 258 F. Supp. 3d 193, 199 (D.D.C. 2017).

Furthermore, while plaintiff offers "personal reasons" for the delay – his "mental health condition during [that] time," and his lack of financial resources and even housing for a period of time, Pl.'s Opp. at 11 – he has not supplied sufficient information to support a finding that these circumstances prevented him from securing legal assistance. *Compare Niskey*, 859 F.3d at 9 (noting that the EEO counselor failed to process the plaintiff's claim and disregarded the obligation

to inform the plaintiff of his procedural rights), *with Thorne v. Shanahan*, 2019 WL 3997440, *5–6 (D.D.C. Aug. 23, 2019) (finding no "good cause" existed to apply equitable tolling when the agency made multiple attempts to contact the plaintiff to advance a formal EEO case).

Also, as defendant points out, *see* Def.'s Reply at 5, the complaint alleges that plaintiff suffered from financial hardship and mental health issues between January 2012 and June 2014. *See* Compl. ¶ 30. Plaintiff states that these circumstances rendered him unable to pursue legal remedies, but that would not account for the entire three year limitations period after the allegedly retaliatory acts, including the demotion on January 3, 2012, the demobilization on February 24, 2012, or the revocation of the job offer in May 2014. *See* Compl. ¶ 88. And a review of plaintiff's own statements in the complaint reveals that during the period immediately after he was rehired by FEMA in June of 2014, he was able to pursue his EEOC case, as well as carry out the duties of his job. *See* Compl. ¶¶ 37–38, 40.

Most important, plaintiff chose to characterize Count Four as "a claim for retaliatory discharge," Compl. ¶ 84, and he would have had from May 20, 2016, to May 2019, to challenge his termination under the False Claims Act. Since the record does not support a finding that plaintiff diligently pursued his judicial remedies, or that he was impeded by extraordinary circumstances during the limitations period, the doctrine of equitable tolling does not apply, and the False Claims Act claim will be dismissed.

### IV.    Count Five: Hostile Work Environment

Plaintiff also alleges that he endured a hostile work environment during his time as FEMA reservist due to his race. *See* Compl. ¶¶ 90–96. As noted above, to the extent that this employment claim is also predicated on sections 1981 and 1983, those allegations will be dismissed.

To determine whether a hostile work environment exists under Title VII, courts "look to 'all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002), quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see also Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008). "Severity and pervasiveness are complementary factors and often go hand-in-hand, but a hostile work environment claim could be satisfied with one or the other." *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014).

The Supreme Court has made clear that the conduct must be so extreme "to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). This "ensure[s] that Title VII does not become a general civility code" that would involve the courts in policing "the ordinary tribulations of the workplace." *Id*. The allegedly harassing environment must be "both objectively and subjectively offensive [and] one that a reasonable person would find hostile or abusive." *Id.* at 787.

Plaintiff's hostile work environment claim points to the following events: "a ten-and-a-half-week IMAT training course" in 2014 at which Paton and Hernandez were present, Compl. ¶ 37; a training exercise in the spring of 2015 where Paton sat beside plaintiff, Compl. ¶¶ 38, 41; a denial of the ability to work remotely, Compl. ¶ 39; a letter of reprimand for failure to follow directions, Compl. ¶ 43; a restriction on his use of a purchase card and travel voucher approval as duties of his position, Compl. ¶¶ 47, 54; a remark made by DuWayne Tewes to another employee in 2016 that plaintiff was "lazy," Compl. ¶ 51; an unsatisfactory performance rating in February 2016, Compl. ¶ 53; the denial of multiple coaching and training opportunities,

Compl. ¶¶ 51, 57–59; and his demobilization and firing in 2016.   Compl. ¶¶ 55, 60; *see also* Pl.'s Opp. at 13.

Plaintiff's list of grievances does not add up to allege the existence of a workplace permeated by discriminatory animus.  It does not include events of a racially discriminatory nature; with only one possible exception, the allegedly offensive occurrences are devoid of any racial content or connotation.  Also, the chronology does not allege a pattern of events that are frequent, and none appears to be "severe" in the sense of being physically threatening or psychologically abusive.  Being sent to training programs, deprived of opportunities for telework, or denied the use of a credit card may have been frustrating, but these are ordinary workplace disputes that fall outside the category of actionable harassment.  Plaintiff may have resented being seated next to a particular supervisor, but those two incidents add little to the calculus.  *See Akosile v. Armed Forces Ret. Home*, 938 F. Supp. 2d 76, 87 (D.D.C. 2013) ("Negative interactions with supervisors . . . generally do not meet [the hostile work environment] standard.") (internal quotation omitted).

Plaintiff's claims that his job responsibilities were curtailed and that he was criticized in performance reviews are also insufficient, without more, to support a hostile work environment claim.  *See Allen v. Napolitano*, 774 F. Supp. 2d 186, 205 (D.D.C. 2011); *see also Pearsall v. Holder*, 610 F. Supp. 2d 87, 98 n.10 (D.D.C. 2009) (finding that allegations of denial of training and underutilization in a role did not support a hostile work environment claim); *Hussain v. Gutierrez*, 593 F. Supp. 2d 1, 7 (D.D.C. 2008) (dismissing a hostile work environment claim based on low performance ratings and downgrading of job responsibilities).  Although plaintiff alleges that he was denied some opportunities to train for roles outside his own at FEMA, this is not discriminatory conduct on its face, and without more information, this allegation does not describe

13

conduct that is sufficiently "severe" or "pervasive" to rise to the level of a hostile work environment claim.  *See Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 93 (D.D.C. 2009).

Plaintiff describes the statement made by his "Second-Line Supervisor" DuWayne Tewes to Equal Rights Advisor Jacquelyn Seymour that he was "lazy" as "a racial derogatory reference and stereotyping of Plaintiff as an African American man."  Pl.'s Opp. at 14.  Another court in this district has observed that "[s]tatements regarding an individual's personal appearance, work ethic or personality, for instance, while containing no overt references to the individual's race, can, in a broader context, be plainly understood expressions of racial hostility."  *Na'im v. Clinton*, 626 F. Supp. 2d 63, 74 (D.D.C. 2009).  So the allegation must be taken seriously.

But here the insult can only be viewed in isolation because plaintiff has not alleged any other disparaging remarks.  Therefore, even if one resolves all inferences in plaintiff's favor as is required at this stage, the remark constitutes, at worst, the "sporadic use of abusive language" that standing alone is insufficient to state a hostile work environment claim as both the severity and pervasiveness are absent.  *Faragher*, 524 U.S. at 787; *see Steward v. Evans*, 275 F.3d 1126, 1134–35 (D.C. Cir. 2002) (use of profanity and abusive language directed at an employee was inadequate when it was not "pervasive"); *Nurriddin*, 674 F. Supp. 2d at 93.

Plaintiff has included a few events in the list that are sufficiently adverse to warrant examination under Title VII, such as his termination, but that coda to his career would not bear on the prior existence of a hostile work environment.  And along with the demobilization and demotion that allegedly affected the terms and conditions of plaintiff's employment, the termination claim will move forward with Count One, and it will be up to plaintiff to prove that those events were indeed motivated by discrimination as alleged.  But Count Five of the complaint

will be dismissed under Federal Rule 12(b)(6) for failure to allege sufficient facts to state a claim for hostile work environment.

**V.      Count Six:  Section 1985(3) claim for conspiracy**

Finally, defendant moves to dismiss Count Six, which alleges that that the FEMA employees conspired to deprive plaintiff of his civil rights and is predicated on 42 U.S.C. § 1985. This claim also fails because it is based on the actions of federal employees and does not allege a conspiracy of "two or more persons in any State or Territory."  42 U.S.C. § 1985(3).

Moreover, even if the proper organization were involved, under the intracorporate conspiracy doctrine, employees of the same governmental agency cannot conspire with one another.  *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1868–69 (2017) (suggesting that "officials employed by the same governmental department do not conspire when they speak to one another and work together in their official capacities" for purposes of section 1985(3)).  Therefore, the Court will dismiss Count Six for failure to state a claim.

## CONCLUSION

For these reasons, the Court concludes that:  the portions of Counts One and Three based on section 1983; the portion of Count Two based on section 1981; Count Four, alleging retaliation arising under the False Claims Act, 31 U.S.C. § 3730(h); Count Five, alleging a hostile work environment under Title VII; and Count Six, alleging conspiracy under section 1985(3) will be dismissed for failure to state a claim, and defendant's motion to dismiss in part will be **GRANTED**.

A separate Order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE: January 22, 2021